UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 25 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| TINA S. HO-GLAND, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:04-CV-225-C |
| § | |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Tina S. Ho-Gland seeks judicial review of decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand Ho-Gland's case to the Commissioner of Social Security.

### I. Judicial Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

The substantial evidence standard requires more than a "simple search of the record for isolated bits of evidence" that would support the Commissioner's decision; the record must be considered as a whole. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted). Therefore, a court must "take into account whatever in the record fairly detracts" from the supporting evidence. *Id.* (quotation omitted).

## II.   Statement of the Case

Ho-Gland is 49 years old, has an elementary school education, and previously worked as a nurse's aide at a nursing home and as a cotton field worker. (Tr. 26, 82, 110, 115, 148.) She applied for SSI claiming that she was disabled because of fibromyalgia and migraine headaches. (Tr. 109.)

At a hearing before an Administrative Law Judge (ALJ), Ho-Gland testified that she was unable to work because of pain. (Tr. 28.) She claimed that she experienced constant pain in her legs, hips, arms, and hands and that her pain caused fatigue and weakness. (Tr. 30, 32.) Although she testified that medication relieved her pain, she claimed that medication did not relieve all of her pain and that she used a cane to walk at times because of swelling and pain in her left leg. (Tr. 31.)

The medical evidence in the record, which is dated back to 1998, shows that Ho-Gland's physicians provided varied diagnoses for her conditions. In 1999, Kevin L. Stewart, M.D., indicated in examination notes that Ho-Gland suffered from sacroiliitis and fibromyalgia. (Tr. 206.) In 2000, testing was negative for rheumatoid factor and, at that

time, Dr. Stewart believed Ho-Gland suffered from generalized myalgias and arthralgias although he noted a history of fibromyalgia. (Tr. 186-87.) It appears that a diagnosis of fibromyalgia was established by a specialist in early 2001 and thereafter Dr. Stewart treated Ho-Gland's pain with prescription medication. (Tr. 186-87.)

In the summer of 2002 Ho-Gland began treatment under Jeff Hannel, M.D. (Tr. 215.) On June 7, 2002, Dr. Hannel noted that Ho-Gland had a history of fibromyalgia and on July 12, 2002, indicated that he planned to consult a rheumatologist regarding her condition. (Tr. 212, 215.) There is no indication in the records that he did so, although on October 10, 2002, results from a screening for arthritis were within normal limits. (Tr. 238.) At that time, Dr. Hannel believed that Ho-Gland suffered from arthritis and possibly Mixed Connective Tissue Disease (MCTD), but the record does not contain evidence that MCTD was confirmed with testing. (*See* Tr. 236, 238.) Thereafter, Dr. Hannel treated Ho-Gland's condition by prescribing Darvocet on a regular basis. (Tr. 262.)

Ho-Gland returned to Dr. Hannel on June 27, 2003, with complaints of increased pain, decreased strength, and headaches. (Tr. 261.) Dr. Hannel indicated that Ho-Gland was suffering from polyarthralgias and prescribed Darvocet for her pain and Imitrex for her headaches. (Tr. 261.) On August 8, 2003, he again examined Ho-Gland and again prescribed Darvocet for her pain. (Tr. 257.)

The records indicate that Dr. Hannel did not examine Ho-Gland again until January 9, 2004, when he diagnosed fibromyalgia. (Tr. 255.) There is no indication that he

3

examined Ho-Gland after this date, although he generated a number of disability opinions before and after that date. On March 20, 2003, he wrote in a "to whom it may concern" letter that Ho-Gland had advanced scleroderma and fibromyalgia with MCTD symptoms which caused pain and rendered her unable to work. (Tr. 252.) This letter was followed by a "Medical Assessment of Physical Capacity to Work" dated July 8, 2003, in which he indicated a "chronic degenerative diagnosis" based on fibromyalgia, polyarthritis, and migraine headaches. (Tr. 250-51.) He also indicated in part that Ho-Gland was capable of lifting five pounds or less, could sit only one hour during an eight-hour work day, and would be unable to stand or walk for any length of time during an eight-hour work day. (Tr. 250.) On April 2, 2004, Dr. Hannel's office provided a statement to a financial screener on which it was indicated that Ho-Gland suffered from fibromyalgia, severe pain, and scleroderma. (Tr. 252.) The last documentation in the record from Dr. Hannel is a "Fibromyalgia Residual Functional Capacity Questionnaire" which he completed on June 17, 2004, after the ALJ issued a decision denying Ho-Gland benefits. (Tr. 6-8, 20, 264-69.)

The ALJ's decision was made at the fifth step of the sequential disability evaluation process. The ALJ acknowledged that Ho-Gland had complained of polyarthralgias and intermittent headaches and summarized the medical records related to her conditions. (Tr. 17.) He acknowledged the disability opinions provided by Dr. Hannel, but declined to adopt them because he determined that they were not supported by objective clinical or diagnostic testing, were not supported by Dr. Hannel's own records, and were inconsistent

with the remaining record. (Tr. 17.)

The ALJ then considered, as the Commissioner's regulations require, Ho-Gland's subjective complaints of pain; however, he determined that the medical record did not substantiate the pain and functional limitations she alleged. (Tr. 18-19.) He then determined that she did not have severe non-exertional limitations and that she was capable of performing the exertional requirements of medium work activity. (Tr. 19.) Based on these findings, the ALJ determined at the fourth step of the sequential disability evaluation process that Ho-Gland could not perform her past work. (Tr. 20.) At the fifth step of the sequential disability evaluation process, he turned to the Commissioner's Medical-Vocational Guidelines and determined that Rule 203.26 directed a conclusion that she was not disabled. (Tr. 20.) The ALJ issued his decision on April 23, 2004. (*Id.*)

On June 23, 2004, Ho-Gland requested review from the Appeals Council and on June 25, 2004, and forwarded the Appeals Council the "Fibromyalgia Residual Functional Capacity Questionnaire" that Dr. Hannel completed on June 17, 2004. (Tr. 6-10, 263-69.) On August 20, 2004, the Appeals Council denied Ho-Gland's request for review, noting that it had considered the questionnaire from Dr. Hannel but that the evidence did not provide a basis for changing the ALJ's decision. (Tr. 6.)

Ho-Gland brings three points of error in this appeal. She contends that the ALJ discounted Dr. Hannel's opinions without considering the factors in 20 C.F.R. § 416.927(d) and failed to recontact him for additional information. She further contends that the pain she

alleges is a non-exertional impairment and that the ALJ was, therefore, required to solicit vocational expert testimony rather than relying exclusively on the Medical-Vocational Guidelines to determine whether she could perform work. Finally, she contends that the Appeals Council erred in failing to remand her case for consideration of the questionnaire provided by Dr. Hannel.

### III. Discussion

Ho-Gland's final two contentions have merit and remand should issue on those points. The Appeals Council stated in its denial of review that it considered the questionnaire provided by Dr. Hannel but determined that the evidence did not provide a basis for changing the ALJ's decision. (Tr. 6.) Ho-Gland contends that the questionnaire demonstrates disability and that in light of the questionnaire, the Appeals Council should have reversed the ALJ's decision and remanded her case for further proceedings. She contends that the questionnaire became part of the record once it was submitted to the Appeals Council and that because the questionnaire demonstrates disability, the court should remand her case for further administrative proceedings.

The Commissioner argues against remand. She argues that there is "some question whether this evidence can even be considered in determining whether substantial evidence exists to support the ALJ's decision" and that a reviewing court is charged only with determining whether substantial evidence supports the ALJ's decision rather than assessing the Appeals Council's denial of review. (Def.'s Br. At 7.) In light of *Higginbotham v.*

*Barnhart*, —F.3d—, 2005 WL 730577 (5th Cir. Mar. 31, 2005), the Commissioner's argument is unavailing.

In *Higginbotham*, the Fifth Circuit Court of Appeals put to rest questions concerning whether an Appeals Council's denial of review constitutes part of the Commissioner's final decision and is, thus, subject to judicial review. *Id.* at *1, 4; *but cf. Masterson v. Barnhart*, 309 F.3d 267, 274 n.3 (5th Cir. 2002) (acknowledging a split of authority among other circuits regarding the question but refusing to settle the question for the Fifth Circuit because the parties did not brief the issue). Specifically, the court held that under 42 U.S.C. § 405(g), a "final decision of the Commissioner of Social Security" includes an Appeals Council's denial of a claimant's request for review and that evidence submitted for the first time to an Appeals Council is part of the record and subject to judicial review. *Higginbotham*, 2005 WL 730577 at *4. Thus, contrary to the Commissioner's argument, there is no question as to whether the court should consider the questionnaire submitted to the Appeals Council and no question that it is relevant to the court's determination as to whether the Commissioner's decision is supported by substantial evidence.

The Commissioner further argues that the Appeals Council was not required to consider Dr. Hannel's questionnaire because it was drafted on June 17, 2004, almost two months after the ALJ's decision was issued and, therefore, relates to a period after the ALJ's hearing and is not material to the issue of disability. She further contends that even if considered by the ALJ, the questionnaire would not have provided a basis for changing his decision.

The Commissioner's argument should be rejected. First, an argument as to whether the Appeals Council was required to consider the questionnaire is irrelevant because the Appeals Council did, in fact, consider the questionnaire. (Tr. 6.) Second, a determination that the questionnaire is not material to the issue of disability does not follow from the fact that the questionnaire was dated after the ALJ's decision. Materiality of evidence depends on its relevance rather than the date on which it was generated. The Fifth Circuit Court of Appeals has held that evidence is material when it relates to the time period for which benefits were denied and does not merely concern a subsequently acquired condition or the deterioration of a condition that was not previously disabling. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). Further, evidence is material when it is relevant and probative. *Chaney v. Schweiker*, 659 F.2d 676, 678 (5th Cir. 1981) (citation omitted).

The opinions in Dr. Hannel's questionnaire relate to the time period for which benefits were denied Ho-Gland because they concern conditions diagnosed prior to the ALJ's decision and do not differ from previous opinions in regard to the severity of those conditions. (*See* Tr. 252; *see also* Tr. 36-39 (the Commissioner's denial of benefits at the initial and reconsideration stages acknowledged a diagnosis of fibromyalgia)).

The questionnaire is relevant and probative because it contains affirmation from Dr. Hannel that his diagnosis of fibromyalgia is based on an assessment of trigger points, which, as the ALJ acknowledged, is approved by the American College of Rheumatology as a means of diagnosing the condition. (Tr. 264.) The ALJ declined to accord weight to other opinions from Dr. Hannel, in part, because he found that his diagnosis of fibromyalgia was

"based solely on the claimant's complaints of body pain, without evidence of examination for the requisite positive trigger or tender points." (Tr. 17.)

Further, the questionnaire is particularly relevant and probative because it provides the record with medical opinion regarding the effect Ho-Gland's pain would have on her ability to perform the non-exertional requirements of work, information which is conspicuously absent from the remainder of the record despite diagnoses of pain-inducing impairments. (*See, e.g.,* Tr. 224-31; 240-48; 250-52.) Specifically, Dr. Hannel indicated in the questionnaire that during a typical workday, Ho-Gland's experience of pain would be severe enough to frequently interfere with attention and concentration needed to perform simple work tasks. (Tr. 266.) In light of this evidence, the Appeals Council should have remanded this case to the ALJ for further consideration as to whether Ho-Gland's non-exertional impairment of pain would significantly affect her ability to work.

Pain may constitute a non-exertional factor that limits the range or types of jobs an individual can perform. *Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir. 1983); *see also Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989) (pain itself may be disabling or prevent the performance of certain jobs). Therefore, although an ALJ may reject a claimant's allegations of disabling pain, when the allegations have a basis in the record, he must consider the claimant's complaints of pain as a factor that would limit the types of work the claimant can perform. *Id.* In cases in which the evidence shows that a claimant has non-exertional impairments that significantly limit his ability to work, the Commissioner must rely on vocational expert testimony rather than the Medical-Vocational Guidelines to show

that the claimant can perform work in the national economy. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In this case the ALJ based his finding of non-disability on Rule 203.26 in the Medical-Vocational Guidelines. (Tr. 20.) There is a basis in the record for Ho-Gland's allegations of pain, (*see e.g.*, Tr. 204, 235, 255), and the ALJ acknowledged that Ho-Gland might experience "some degree of pain or discomfort at times of overexertion" (Tr. 19). Dr. Hannel's opinion that Ho-Gland's pain would interfere with her attention and concentration is further evidence that Ho-Gland's pain is a non-exertional limitation that would limit the range of jobs she can perform. *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994); 20 C.F.R. § 416.969a(c) (2004). Therefore, the Commissioner should reconsider the evidence of Ho-Gland's pain to determine whether it would limit the type of work she can perform. *See Carter*, 712 F.2d at 142. If it is determined that Ho-Gland's pain is a non-exertional limitation that would significantly interfere with her ability to work, a vocational expert must be consulted to determine whether jobs exist in the national economy that Ho-Gland can perform. *Crowley*, 197 F.3d at 199; *Scott*, 30 F.3d at 35.

Ho-Gland's contentions under her first point of error are not discussed in this Report and Recommendation because (1) it is clear from the ALJ's decision that he applied the regulatory factors to Dr. Hannel's opinions before declining to give the opinions controlling weight (Tr. 17-18) and (2) clarification and additional information regarding the bases of Dr. Hannel's opinions are provided in the questionnaire submitted to the Appeals Council

and must be considered on remand; therefore, Ho-Gland's contention that the ALJ should have recontacted Dr. Hannel need not be addressed.

## IV.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse and remand the decision of the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

## V.   Right to Object

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____May 25_____, 2005.

NANCY M. KOENIG
United States Magistrate Judge